IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RODNEY KINARD, ) | Civil Action No. 3:10-129-TLW-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB on November 21, 2005, alleging disability since September 22, 2003. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held on October 7, 2008, the ALJ issued a decision on November 25, 2008, denying benefits and finding that Plaintiff was not disabled within the meaning of the Act because he was able to perform his past relevant work as a mortgage loan originator and property manager.

Plaintiff was sixty-three years old at the time of the ALJ's decision. He has a college education, with past relevant work as a "self employed" property manager and mortgage loan originator. (Tr. 45, 52). Plaintiff alleges disability since September 22, 2003, due to residuals of crush injuries to both heels. (Tr. 125).

The ALJ found (Tr. 45-53):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2004.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 22, 2003, through his date last insured of December 31, 2004 (20 CFR 404.1520(b) and 404.1571 *et. seq.*)

3. Through the date last insured, the claimant had the following severe impairment: residuals of crush injuries to both heels (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work.

6. The claimant's past relevant work as a mortgage loan originator and property manager did not require the performance of work-related activities precluded by the claimant's residual functional capacity through the date last insured (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 22, 2003, the alleged onset date, through December 31, 2004, the date last insured (20 CFR 404.1520(f)).

On December 23, 2009, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on January 19, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner,

Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL RECORDS

Plaintiff primarily received medical treatment from Dr. Robert B. Borucki, a family practitioner. Dr. Borucki prescribed medications for pain relief and anxiety. Tr. 188-190. In October 2003, Plaintiff reported continuing heel pain, which was relieved with medication. Tr. 189. On December 30, 2003, Dr. Borucki prescribed Vicodin for Plaintiff's continuing heel pain. Tr. 188. The next record from Dr. Borucki is on October 5, 2005 (approximately nine months after Plaintiff's date last insured). At that time, Plaintiff complained of occasional back pain. It was noted that Plaintiff had stopped taking Vicodin and was taking Celebrex. Tr. 322-327. On December 22, 2005, Plaintiff described moderately severe heel pain previously treated with over-the-counter medication and non-steroidal anti-inflammatory ("NSAID") medications. He had discontinued taking Celebrex. Dr. Borucki continued Plaintiff's medications and added "minimal" use of Vicodin. Tr. 317-320.

Plaintiff received physical therapy in November and December 2003. He was initially reliant on a wheelchair. Tr. 194. He regained the ability to walk with crutches and was walking without crutches in December 2003. Tr. 194-206.

During the relevant time period, Plaintiff also received treatment at the Veterans Administration Medical Center ("VAMC"). In January 2004, it was noted that Plaintiff walked with crutches and used a wheelchair only for longer distances. Tr. 213. Plaintiff reported lower back pain

which was stabilized on Celebrex. X-rays of Plaintiff' lumbar spine showed only some mild degenerative disc disease. Tr. 215. In March 2004, it was noted that Plaintiff's feet fractures were much improved and that he was requesting a cane. Tr. 220.

In August 2005, Dr. Borucki referred Plaintiff for examination with Dr. James Bethea, an orthopedist. Dr. Bethea noted that Plaintiff used a cane for walking and tried Celebrex, Vicodin, and Tylenol to manage his heel pain. X-rays of both feet and heels revealed that open reduction internal fixation had been done, that there appeared to be residual displacement of his intra articular fracture on the right heel, and that on the left the hardware was somewhat proud. Dr. Bethea concluded that Plaintiff experienced persistent pain and would not be able to return to hiking as a hobby. He suggested that Plaintiff consider biking or rowing for exercise. Dr. Bethea thought that a surgical operation might alleviate Plaintiff's symptoms, but Plaintiff had not tried all conservative measures yet. Tr. 267-268.

After Plaintiff applied for disability benefits, Dr. Borucki gave opinions concerning Plaintiff's ability to work. In February 2006 (more than a year after Plaintiff's date last insured), Dr. Borucki opined that Plaintiff was unable to perform the minimal standing or walking required by sedentary work and that Plaintiff was unable to sit for at least six hours in an eight hour workday. He stated that Plaintiff experienced frustration and depression. Dr. Borucki thought that Plaintiff was unable to work due to persistent pain requiring narcotic pain medication. Tr. 246-249.

In September 2008, Dr. Borucki opined that Plaintiff was unable to work even one hour per day or lift any weight on an occasional basis. He wrote that Plaintiff needed to elevate his feet "most of the time" and noted that Plaintiff had depression and back pain. Tr. 418. Dr. Borucki also completed a Medical Source Statement (Mental) in September 2008. He opined that Plaintiff

experienced "poor" reliability, emotional stability, and predictability in social situations, as well as "poor" ability to maintain attention and concentration. Tr. 419-420.

## HEARING TESTIMONY

At the October 2008 hearing before the ALJ, Plaintiff testified that he was unable to work because of persistent pain in his feet. He stated that being active or being on his feet for any length of time made the pain worse such that he had to elevate and ice his feet. Tr. 18. Plaintiff also complained of lower back pain. Plaintiff stated that he took pain relieving medication, but his back pain woke him up in the morning. Tr. 20-21. He said that, due to pain, he spent half of each day in a recliner or bed. Tr. 21.

Plaintiff also testified that depression prevented him from returning to work. He said that there were some days when he did not even leave the house and would have to cancel appointments. He reported that he had recently started therapy at the VAMC and was previously treated by Dr. Borucki for depression. He said that he saw a therapist soon after his fall in September 2003, but stopped seeing the therapist after Dr. Borucki prescribed antidepressants. Tr. 22-23.

Plaintiff testified that he continues to manage rental properties. He hired others to perform repairs. Plaintiff's hours varied from week to week, and he earned approximately $25,000 a year from this activity. Tr. 15-16.[1] Plaintiff reported that he was the sole care giver for his mother. He stated that it was a time-consuming responsibility as his mother had dementia. Plaintiff drove his mother to doctors' appointments. Tr. 17.

---

[1] The ALJ found that this work did not rise to the level of substantial gainful employment because Plaintiff's tax returns showed lower net earnings. See Tr. 45-46.

**DISCUSSION**

Plaintiff alleges that: (1) the ALJ erred in finding that Plaintiff has the residual functional capacity ("RFC") to perform a full range of sedentary work; (2) the ALJ erred in disregarding the opinion of Plaintiff's physician; (3) the ALJ erred in evaluating Plaintiff's credibility; and (4) the ALJ failed to consider the combined effects of all of Plaintiff's impairments in assessing his RFC. The Commissioner contends that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act on or before December 31, 2004 (Plaintiff's last date insured) is supported by substantial evidence[2] and free of legal error.

A.      Treating Physician

Plaintiff argues that the ALJ erred in disregarding the opinion of his treating physician (Dr. Borucki) that he had the RFC for less than the full range of sedentary work. He asserts that the ALJ should have accepted the opinion because Dr. Borucki's findings do not conflict with other medical records which show that Plaintiff experienced continued heel and back pain for which he could not find consistent relief. The Commissioner contends that the ALJ properly discounted Dr. Borucki's opinions as they were unsupported and were inconsistent with evidence from the VAMC and orthopedist Dr. Bethea.

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

6

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d). Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Borucki's opinions is supported by substantial evidence. Dr. Borucki's opinions were discounted by the ALJ in part because Dr. Borucki's opinions were inconsistent with the doctor's own treatment notes. See Tr. 51-52. Although Dr. Borucki opined that Plaintiff had severe pain and physical limitations (Tr. 246, 418), his treatment notes indicate that upon examination Plaintiff had "no" or "some" tenderness. Tr. 189-190. Dr. Borucki noted a "fair

7

amount" of back pain in September 2007, which was well after the relevant time period. Dr. Borucki generally treated Plaintiff's pain with over-the-counter medications, NSAIDs, or minimal use of Vicodin. Tr. 282, 307, 317, 319. Although Dr. Borucki opined that Plaintiff suffered from a number of mental limitations, he merely noted complaints of anxiety in October 2003 for which he prescribed Xanax. Tr. 190. Dr. Borucki on numerous occasions wrote that Plaintiff's psychiatric examination was essentially normal. Tr. 288, 294, 299, 303, 308, 313, 318, and 323. Even in September 2008, he only described Plaintiff as "mildly" depressed. Tr. 439. Although medical opinions from after the date last insured may sometimes be probative to a disability determination, these medical opinions must relate back to the relevant period and offer a retrospective opinion on the past extent of an impairment. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987). On the other hand, ALJs may also discount these opinions when they are dated long after the date last insured and are inconsistent with other opinions from the relevant period. See Johnson v. Barnhart, 434 F.3d 650, 656 (4th Cir. 2005).

The ALJ's decision to discount Dr. Borucki's opinions based on the records from the VAMC (see Tr. 52) is also supported by substantial evidence. Plaintiff reported on January 6, 2004 that he had some mild low back pain, but it was mostly present in the morning, it got better throughout the day, and Celebrex helped his pain. Tr. 213. On April 6, 2004, the VAMC records note that Plaintiff's heel fractures were healing and Plaintiff overall felt well. Tr. 222. Plaintiff reported no pain on September 8, 2004 (Tr. 225), and his pain level was only at a 2 on a scale of 1-10 on April 13, 2005 (Tr. 232). Dr. Borucki's opinion as to Plaintiff's mental impairments is contradicted by depression screening at the VAMC in January 2004 and April 2005 which was reported as negative. Tr. 215-216, 232.

The ALJ also found that Dr. Borucki's opinions were inconsistent with those of treating orthopedist Dr. Bethea. Dr. Bethea, after examining Plaintiff and reviewing Plaintiff's x-rays, concluded that Plaintiff experienced persistent heel pain that prevented him from walking for prolonged periods, but suggested that Plaintiff consider biking or rowing for exercise. Tr. 267-268. Such a suggestion is not inconsistent with the ALJ's limitation of Plaintiff to sedentary work and contradicts Dr. Borucki's opinion that Plaintiff was more severely limited.

B.      Credibility

Plaintiff asserts that the ALJ erred in not finding that his testimony concerning the intensity, persistence, and limiting effects of his impairment was credible. The Commissioner contends that the ALJ properly found Plaintiff was not credible, citing evidence of conservative treatment and significant daily activities. In his reply, Plaintiff argues that his treatment was not conservative because it included that he was prescribed Vicodin, Lexapro, and Celebrex.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d at 591-92; Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged

functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. The medical record, as detailed above, supports the ALJ's conclusion that Plaintiff could perform sedentary work. The ALJ's decision to discount Plaintiff's credibility in part because he only required conservative treatment is supported by substantial evidence. As detailed by the ALJ (Tr. 50), Plaintiff's symptoms were alleviated with mild pain analgesics. He did not require frequent inpatient admissions and did not require emergency room treatment since the time of his fall in September 2003. Plaintiff did not require aggressive treatment for his reported mild, occasional back pain.

The ALJ's decision to discount Plaintiff's credibility based on Plaintiff's activities of daily living is supported by substantial evidence. Plaintiff was able to work several hours per week managing rental properties and managed finances (including a stock portfolio) for himself and his mother. Tr. 15-17, 146. He was the primary caretaker for his mother, taking her to appointments, running errands, and shopping. Tr. 17, 146, 148. Although he had limitations on his physical activity, he reported going to a gym two to three times a week to ride a recumbent bike and lift weights (Tr. 461), and being able to walk one to four blocks and lift up to 25 pounds (Tr. 150). Plaintiff was able to perform household chores including light dusting, laundry, and gardening with houseplants. He also said that he prepared sandwiches, frozen dinners, and other meals that did not require long periods on his feet. Tr. 147. Plaintiff also reported engaging in social activities almost daily which included eating out, visiting with friends and family, being a board member for a homeless shelter, and taking care of his mother. He also spent about two hours a week shopping for

groceries and household items. Tr. 149. Plaintiff argues that the ALJ should have found him credible based on his description of his functioning at the October 2008 hearing. The hearing was almost four years after Plaintiff's date last insured. Plaintiff reported activities of living in December 2005 (one year after his date last insured) which are not inconsistent with the ALJ's decision to discount his credibility. Further, even at the time of the October 2008 hearing, Plaintiff testified to activities which were not inconsistent with the ALJ's determination that Plaintiff's pain would not prevent him from performing sedentary work.

      C.      RFC/Combination of Impairments

Plaintiff alleges that the ALJ's finding that Plaintiff could perform the full range of sedentary work is not supported by substantial evidence. He also asserts that the ALJ failed to consider the combined effect of all of his impairments in assessing his RFC. The Commissioner contends that the ALJ properly determined Plaintiff's RFC, finding that sedentary work accommodated Plaintiff's limitations. Additionally, the Commissioner argues that the ALJ properly consider all of Plaintiff's impairments in combination.

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(B), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59. "In assessing

RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p.

The ALJ properly considered Plaintiff's combination of impairments in determining that Plaintiff had the RFC for sedentary work. Sedentary work involves lifting no more than ten pounds and is generally performed while seated. 20 C.F.R. § 404.1567(a). Standing or walking is not required for more than two hours of an eight hour workday. SSR 83-10. The ALJ discussed each of Plaintiff's severe and non-severe impairments at length (Tr. 48-49) and found that Plaintiff had an RFC for sedentary work based on "the entire record, including...the combined effect of all of the claimant's impairments." Tr. 52. Plaintiff argues that the ALJ should have found that Plaintiff's RFC was limited to less than sedentary work based on Dr. Borucki's opinions. As discussed above, however, the ALJ properly discounted those opinions. The ALJ's limitation of Plaintiff to sedentary work is supported by the medical record, including the objective medical evidence. It is also supported by Plaintiff's own report that he could lift twenty-five pounds and his reported activities of daily living.

## CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the

Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

    RECOMMENDED that the Commissioner's decision be **affirmed.**

                                Joseph R. McCrorey
                                United States Magistrate Judge

January 28, 2011
Columbia, South Carolina